UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRY L. CLEMONS, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | )   Case No.  4:21-cv-00678-SRC |
| | ) |
| BRADFORD O'NEIL AGENCY, LLC, | ) |
| | ) |
| Defendant(s). | ) |

### Memorandum and Order

Facing allegations that it violated federal telecommunications law, Bradford O'Neil Agency moves to dismiss Sherry Clemons's Complaint. The Agency asserts first that the Court may disregard Clemons's allegations in her Amended Complaint just because they differ from those in the original; second, that the do-not-call provisions of the Telephone Consumer Protection Act afford Clemons's cell phone no protection; and third, that Clemons has no right to demand attorneys' fees in this suit. Docs. 21, 23. The Court rejects these arguments in turn and denies the Agency's motion.

**I.      Background**

Clemons's Amended Complaint alleges that the defendant, Bradford O'Neil Agency, is a company that sells State Farm insurance policies, and that, to sell policies to consumers, the Agency makes telephone solicitations. Doc. 19 at ¶¶ 10, 12. Around January 2019, Clemons claims to have received a phone call from the Agency in which a caller attempted to sell her insurance products. *Id*. at ¶¶ 18–21. On that call, Clemons claims to have informed the caller that she was not interested in buying insurance and advised that she did not want to be called again, but despite this request, Clemons continued to receive calls from the Agency. *Id*. at ¶¶ 22,

24–25. Clemons alleges that even though she called the Agency later that month and spoke with the owner who promised to remove her from the calling list, she continued to receive phone calls about once every month thereafter. *Id.* at ¶¶ 26–35. The Court notes that Clemons has somewhat inconsistently pleaded the precise dates on which the alleged telephone solicitations took place. *Compare id.* at ¶¶ 18, 30, 33 (first call allegedly received in January 2019 and additional calls thereafter at a rate of approximately once per month including calls on February 7, 2019, and October 16, 2019) *with* Doc. 5 at ¶ 25 (first call allegedly received in June 2019—apparently a mistaken date—and additional calls on February 7, 2019, and October 16, 2019) *and* Doc. 20-2 at ¶¶ 38, 44 (first call allegedly received in June 2019 and additional calls thereafter "at a rate of approximately once per month") *and* Doc. 20-3 at ¶¶ 38, 45 (first call allegedly received in January 2019 and additional calls thereafter "at a rate of approximately once per month" and specifically on February 7, 2019 and October 15, 2019).

      Clemons claims that she received these calls from the Agency on the cell phone that she uses for "personal residential purposes," and that the number associated with her cell phone has been listed on the National Do Not Call List for many years. Doc. 19 at ¶¶ 16–17. Furthermore, Clemons claims to have never provided consent to receive telephone solicitations from the Agency. *Id*. at ¶ 13.

      This past spring, Clemons filed this putative class-action lawsuit in state court, alleging that the Agency violated the Telephone Consumer Protection Act ("the Act"), 47 U.S.C. § 227, by initiating telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the National Do Not Call Registry. *Id.* at pp. 6–9; *see* 47 C.F.R. § 64.1200(c)(2). The lawsuit seeks class-action certification, money damages, injunctive relief, and attorneys' fees and costs. *Id.* at pp. 9–10.

After removing the case to this Court, Doc. 1, the Agency moved to dismiss for failure to state a claim upon which relief can be granted, claiming that Clemons's prior, inconsistent allegations render her claims implausible, and that Clemons has not pleaded a violation of the Act because the Act's do-not-call provisions only protect landline, residential phones and not cell phones. Doc. 20 at p. 2. Alternatively, the Agency has moved to strike Clemons's demand for attorneys' fees, arguing that the demand has no basis in law. *Id.*

## II.      Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of

a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

Furthermore, Rule 12(f) provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court enjoys broad discretion under this rule but striking a party's pleadings is extreme. For this reason, courts view motions to strike "with disfavor" and "infrequently" grant them. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). When a party has moved to strike a demand for attorney's fees, the Court will only grant the motion if there is no possible legal basis for a fee award, resolving any doubt in favor of the non-moving party. *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 575 (E.D. Pa. 2020).

### III.     Discussion

The Agency first contends that the Court need not take Clemons's allegations in her Amended Complaint as true because contradictions in her pleadings in this case and a related case render Clemons's allegations implausible. Second, the Agency argues that Clemons's claim fails as a matter of law because 47 U.S.C. § 227(c) applies only to landlines and not cell phones. Finally, the Agency asks the Court to strike Clemons's request for attorney's fees as without legal basis.

### A.     For purposes of the motion, the Court accepts the allegations in the Amended Complaint as true regardless of previous inconsistency

The Agency asks the Court to ignore Clemons's allegations about the Agency's calls because she has inconsistently pleaded when those calls occurred. In so arguing, the Agency relies on out-of-circuit precedent allowing courts to disregard amendments to complaints when

4

the amendments contradict prior pleadings. The courts the Agency cites reason that courts are "not required to accept representations that the court view[s]," in light of previous filings, as "nonsensical," that is, truly irreconcilable, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998) (in which plaintiff first alleged that defendant's lawyer *did not* explain contract language to him, and then, once the Court dismissed the claim, alleged that defendant's lawyer *did* explain much of the contract language to him), or "false and sham," *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329–30 (9th Cir. 1981) (affirming dismissal under Rule 11 when "[e]ssential allegations of the complaint were false."). But *Ellingson*, which interpreted Rule 11 and did not apply Rule 12, is no longer good law after the [1983] amendment to Rule 11." *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.3 (9th Cir. 2007). The Ninth Circuit now holds that district courts have "no free-standing authority to strike pleadings simply because [they] believe[] that a party has taken inconsistent positions in the litigation. *Id.* ("We do not call this sham pleading; we call it litigation."). While "the Federal Circuit reached a contrary conclusion in *Bradley v. Chiron Corp.*, . . . no other court of appeals has followed that decision. . ." *Id*. In this case, Clemons represents to the Court that differences between the original and amended complaints regarding the dates of particular phone calls between the Agency and Clemons were "a mistake." Doc. 22 at p. 5. The Court takes this representation at face-value and notes that "[t]he purpose of Rule 15(a) is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999) (internal quotation marks omitted). Furthermore, the Agency does not assert that Clemons's Amended Complaint contains false or sham allegations. Therefore, for the purpose of considering this motion, the Court assumes the truth of all of Clemons's well-pleaded allegations in her Amended Complaint.

As other in-circuit courts have noted, the precedent the Agency cites "is not persuasive," *Bielema v. Razorback Found., Inc.*, No. 20-cv-5104, 2020 WL 4906054, at *1 (W.D. Ark. Aug. 20, 2020), when one considers that, in the Eighth Circuit, "[i]t is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect," *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Moreover, the cases the Agency cites are either no longer good law or have no applicability to this case because the Agency makes no claim that Clemons's allegations in her Amended Complaint are nonsensical or fraudulent.

### B. The do-not-call regulations apply to cell phones

The Agency next argues that Clemons's claim fails as a matter of law because the do-not-call regulations implementing the Act do not apply to cell phones. These regulations provide that:

> No person or entity shall initiate any telephone solicitation to:
> . . .
> A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200(c)

Two sections later, the regulations say that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,' 47 C.F.R. § 64.1200(e), which clarified that only *residential* cell phone subscribers are protected by

6

the regulations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14034–42 (2003).

The Agency has no good answer to the plain language of the regulation and instead cites a handful of cases holding that § 64.1200(c) does not apply to cell phones, Doc. 21 at pp. 12–13 (citing *Cunningham v. Sunshine Consulting Grp., LLC*, No. 16-cv-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018); *Cunningham v. CBC Conglomerate LLC*, No. 17-cv-793, 2019 WL 7500497, at *9 (E.D. Tex. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 70917 (E.D. Tex. Jan. 7, 2020);  *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-9131, 2015 WL 13658554, at *5 (N.D. Ill. Jan. 23, 2015)).  However, none of the cases the Agency cites even *mention* § 64.1200(e), let alone consider that the section applies the do-not-call regulations to cell phone numbers.  Indeed, all of the courts "that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d).  *Smith v. Truman Rd. Dev., LLC*, No. 4:18-CV-00670-NKL, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020) (collecting cases).  The Court concludes that, in light of the clear regulatory language, a "cell phone user can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c) and (d)." *Id*.

In its memoranda, the Agency—seemingly acknowledging that the plain language of § 64.1200(e) forecloses its argument—coyly suggests that this Court should decline to apply § 64.1200(e) because its provisions exceed the authority granted to the Federal Communications Commission by the Act. Doc. 21 at p. 9 n.4.  The Agency tersely contends that the FCC lacked authority to promulgate the regulation because 47 U.S.C. § 227(c)(1) directed the FCC to address "the need to protect residential telephone subscribers' privacy rights." *See* Doc. 23 at pp. 3–4

7

("Because Section 227(c) is limited to residential telephones, Plaintiff's reliance on the FCC regulation and 2003 Order fails."). Acknowledging that district courts may lack authority to determine the validity of certain FCC orders, the Agency further posits in its footnoted argument that the Supreme Court has "cast doubt on the view that a district court lacks the authority to review the validity of an FCC order[.]" Doc. 21 at p. 9 n.4 (citing *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019)). However, the Eight Circuit held in the context of a private enforcement suit that the "[t]he Hobbs Act provides that the courts of appeals have exclusive jurisdiction to determine the validity of FCC orders." *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) (citing 28 U.S.C. § 2342). Absent a Supreme Court holding to the contrary, this Court must follow the Eighth Circuit, *M.M. ex rel. L.R. v. Special School Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008), and lacks the jurisdiction to consider the validity of the regulations.

As a final parry, the Agency argues that even if the Court finds that a call to a cell phone can violate 47 C.F.R. § 64.1200(c), the Court should nevertheless dismiss the case because Clemons's allegation that her cell phone is used for personal and residential purposes is merely conclusory and does not satisfy the pleading requirements of Rule 8. This argument lacks merit. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the question of whether Clemons uses her cell phone for personal and residential purposes has important legal consequences for this case, Clemons's allegation is a factual one and in no way conclusory. Clemons's pleading places the

8

Agency on notice that one of the issues in the case is whether Clemons uses her cell phone for residential purposes.  Rule 8 requires nothing more.

        **C.**        **Because Clemons has filed her lawsuit on behalf of a putative class, the Court denies the Agency's motion to strike Clemons's request for attorneys' fees.**

Finally, the Agency has moved to strike Clemons's request in her prayer for relief for attorneys' fees "as permitted by law."  Doc. 19 at p. 10.  Both parties acknowledge that the Act does not have a fee-shifting provision and that Clemons would not be entitled to fees if she proceeded in this lawsuit solely on her own behalf.  However, Clemons has filed her lawsuit on behalf of a putative class and has clarified that her attorneys would seek fees and costs only from a common fund associated with a class-action judgment.  Acknowledging this, the Agency asks the Court to require Clemons to amend her complaint to clarify that she does not seek "fees from O'Neil Agency," but rather a potential common fund.  Doc. 23 at p. 5.

Since the parties agree that there is a "possible legal basis for a fee award," the Court denies the Agency's motion to strike.  *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 575 (E.D. Pa. 2020) ("Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken."). Further, the Court will not direct Clemons to amend her Complaint because Clemons's attorneys have made clear that they seek attorneys' fees and costs only from a potential class-action judgment, which the Court notes would be paid into by the Agency.  Clemons's prayer, therefore, clearly sets out the relief she seeks.

9

## IV. Conclusion

For the foregoing reasons, the Court denies Bradford O'Neil Agency, LLC's [20] Motion to Dismiss and denies the Agency's previously filed [15] Motion to Dismiss as moot.

So Ordered this 22nd day of December 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**