**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SHERRY L. CLEMONS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>O'NEIL INSURANCE COMPANY, INC. and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY<br><br>          Defendants. | Case No. 4:21-cv-00678<br><br>**JURY TRIAL DEMANDED** |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff Sherry L. Clemons (hereinafter "Ms. Clemons" or "Plaintiff") on behalf of herself and the proposed class defined below brings this action against O'Neil Insurance Company, Inc. ("O'Neil Insurance"), and State Farm Mutual Automobile Insurance Company ("State Farm") (collectively "Defendants") for the Defendants' violations of the do-not-call rules of the Telephone Consumer Protection Act ("TCPA"), <u>47 U.S.C. § 227</u>.

<u>**NATURE OF THE ACTION**</u>

1.     Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective.  However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.  As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes….  Banning such automated or

> prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

2.      As is relevant here, the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

3.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the National Do Not Call Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

4.      The TCPA and implementing regulations also require company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

5.      This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

6.      These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

7.      Defendant O'Neil Insurance, a licensed insurance agent of Defendant State Farm, caused multiple telemarketing calls to be made to the telephones of Plaintiff and others without their prior express invitation or permission, despite such person's prior request to not be called and/or registration with the National Do Not Call Registry.

8.      Defendant State Farm was and is aware that its licensed agents such as O'Neil Insurance routinely make a large volume of calls to potential customers.  Indeed, State Farm provided the dialing system used by Defendant O'Neil Insurance to make the calls to Plaintiff. Furthermore, State Farm provided the numbers to

9.      State Farm also provided telemarketing guidelines for Defendant O'Neil Insurance to follow. As such, State Farm is vicariously liable for the TCPA violations of its agents pursuant to 47 U.S.C. §227(c) and 47 CFR 64.1200(c).

10.      Plaintiff files this class action complaint on behalf of herself and others similarly situated, seeking relief from Defendants' illegal calling practices.

## THE PARTIES

11.      Plaintiff Sherry L. Clemons is a natural person who resides in St. Louis County, Missouri.

12.      Defendant O'Neil Insurance Company, Inc. is a domestic corporation.

13.      State Farm is the parent company of a series of interrelated insurance and financial services companies.  State Farm is a Delaware corporation with corporate headquarters in Bloomington, Illinois.

## JURISDICTION AND VENUE

14.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA.

15.     This Court has personal jurisdiction over O'Neil Insurance as it is registered in this District, provides services in this District, and makes telemarketing calls into this District. This Court has jurisdiction over State Farm because it is registered in this District and provides leads for O'Neil Insurance to call into this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and was first injured in this District since that is where she received the telemarketing calls at issue.

## FACTUAL ALLEGATIONS

**A.     Factual Allegations Regarding Defendant O'Neil Insurance**

17.     O'Neil Insurance is a company that offers insurance services through State Farm.

18.     O'Neil Insurance's telephone number is (314) 300-9100. *See* https://www.statefarm.com/agent/us/mo/saint-louis/bradford-oneil-s4ns6832vak (last visited March 23, 2021); *see also* https://www.gotbradford.com/ (last visited March 23, 2021).

19.     One of O'Neil Insurance's strategies for marketing its services includes the use of telephone solicitation calls.

20.     In making such calls, O'Neil Insurance utilized a telephone system provided by State Farm.

21.     In determining who to call, O'Neil Insurance made calls to individuals provided to it by State Farm.

22.     Recipients of these telephone solicitation calls, including Plaintiff, did not consent to receive such calls.

23.     O'Neil Insurance was required to complete forms and other documentation regarding Do Not Call requests, and to submit this information to State Farm.

24.     O'Neil Insurance was also expected to follow telemarketing guidance provided by State Farm.

**B.     Factual Allegations Regarding Plaintiff**

25.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26.     Plaintiff's telephone number, (314) XXX-8140, is a non-commercial telephone number not associated with any business.

27.     Plaintiff's telephone number, (314) XXX-8140, is a cellular telephone number used for personal residential purposes.

28.     Plaintiff's telephone number, (314) XXX-8140, has been registered with the National Do Not Call List since 2005.

29.     In or around January 2019, Plaintiff received a telephone solicitation call to her cellular telephone number, (314) XXX-8140, from telephone number (314) 300-9100.

30.     (341) 300-9100 is a telephone number associated with O'Neil Insurance and is listed on its website as well as State Farm's agent listing page for O'Neil Insurance. *See* https://www.statefarm.com/agent/us/mo/saint-louis/bradford-oneil-s4ns6832vak (last visited March 23, 2021); *see also* https://www.gotbradford.com/ (last visited March 23, 2021).

31.     When Plaintiff answered the call, she heard a long period of "dead air" before hearing the voice of a live operator.

32.     Once the call was connected to a live operator, the caller informed Plaintiff that State Farm has low insurance rates in her area and attempted to solicit her to switch her insurance carrier to State Farm.

5

33.     Plaintiff was not interested in State Farm's insurance services and informed the caller as such.

34.     Plaintiff may have been listed on an insurance policy provided by State Farm, purchased and maintained by her husband, eight years ago.

35.     At the end of that call, Plaintiff informed the caller that she wished to receive no additional calls from State Farm.

36.     Despite Plaintiff's request that Defendants stop calling her, she continued to receive telephone solicitation calls from telephone number (314) 300-9100.

37.     On January 25, 2019, after making multiple unsuccessful requests for State Farm to cease calling her, Plaintiff called telephone number (314) 300-9100 and asked to speak with Bradford O'Neal, the owner of the insurance agency.

38.     During this call, Plaintiff requested that Defendants cease calling her.

39.     O'Neil promised to remove Plaintiff from the calling list.

40.     However, the calls continued.

41.     On February 7, 2019, Plaintiff received another call from telephone number (314) 300-9100 marketing State Farm's insurance products.

42.     During the call, Plaintiff again requested that Defendants cease calling her.

43.     Plaintiff became so frustrated by the calls that, after receiving the call on February 7, 2019, she filed a no-call complaint with the Missouri Attorney General.

44.     Plaintiff continued to receive calls from (314) 300-9100 marketing State Farm's insurance products approximately once per month, included one such call on October 16, 2019.

45.     At the end of every call, including the October 16, 2019, call, Plaintiff requested that Defendants cease calling her.

6

46.    To date, these requests have not been honored.

47.    Each of the above-described calls occurred after Plaintiff had registered her residential telephone number with the National Do Not Call Registry.

48.    Plaintiff did not provide her prior express consent to receive telephone solicitation calls on her cellular telephone from Defendant.

49.    Plaintiff and other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded.

**C.    Defendant State Farm's Vicarious Liability**

50.    For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

51.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

52.    In that ruling, the FCC instructed that sellers such as State Farm may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

53.    State Farm provided Defendant O'Neil Insurance with a telephone system to make telemarketing calls in order to generate revenue for State Farm.

54.    State Farm also provide the Defendant O'Neil Insurance with telephone numbers to make solicitation calls to.

55.    Moreover, State Farm required O'Neil Insurance to complete forms and other documentation regarding Do Not Call requests, and to submit this information to State Farm.

56.    Thus, State Farm was fully aware of, authorized, and facilitated the calling activities in which O'Neil Insurance and other State Farm agents engaged.

57.    Moreover, whatever formal protocols may have existed with regard to the National Do Not Call Registry, State Farm's policies and procedures with regard to Do Not Call compliance were clearly insufficient, as seen by the repeated violations committed by O'Neil Insurance to Plaintiff.

58.    State Farm knew, or should have known, that O'Neil Insurance was violating the TCPA on its behalf.

59.    State Farm gave further interim instructions to O'Neil Insurance by providing it with leads to contact via telemarketing as well as with telemarketing guidance.

60.    Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority

8

on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ALLEGATIONS

61.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and the following proposed Classes (the "Classes"):

> **National DNC Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendants or an agent acting on behalf of Defendants made (2) two or more telemarketing calls; (3) promoting Defendants' products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 31 days before the first call; and (5) within any twelve-month period.

> **Internal DNC Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made more than one non-emergency telephone call; (2) promoting Defendants' products or services; (3) to a residential phone number; and (4) who were not a current customer of Defendants at the time of the call(s).

62.     The following people are excluded from the Classes: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendants or its parents have a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

63.    **Numerosity**: The exact number of members of the Classes are unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

64.    **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

65.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

66.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a.    Whether Defendant O'Neil Insurance systematically made multiple telephone calls to members of the Classes;

b.    Whether Defendant O'Neil Insurance made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

c.    Whether State Farm is vicariously liable for O'Neil Insurance's conduct;

d.    Whether Defendants have established and implemented, with due care,

reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations, including maintaining a written "do not call" policy;

        e.      Whether Defendants recorded or honored "do not call" requests;

        f.       Whether Defendants trained their employees or agents engaged in telemarketing

        g.      Whether Defendants' conduct constitutes a violation of the TCPA; and

        h.      Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

67.    **Superiority**: A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

68.    **Injunctive and Declaratory Relief Appropriate**. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made

by or on behalf of Defendants that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

69.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70.    It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

71.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

72.    These violations were negligent, willful or knowing.

73.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

74.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).


## COUNT II
### Violations of the TCPA, 47 U.S.C. §227
### (On Behalf of Plaintiff and the Internal DNC Class)

75.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76.     Defendants placed numerous calls for telemarketing purposes to Plaintiff and Internal DNC Class Members.

77.     Defendants did so despite not recording or honoring "do not call" requests.

78.     Defendants placed two or more telephone calls to Plaintiff and Internal DNC Class Members in a 12-month period, or others did so on their behalf.

79.     As a result of Defendants' violations of the TCPA, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

80.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants for:

A.     Certification of the Classes as alleged herein;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

E.     Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do

Not Call Registry and requiring appropriate internal do not call policies and procedures to be

implemented and followed;

F.    Attorneys' fees and costs, as permitted by law; and

G.    Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY**

Plaintiff hereby demands a trial by jury for all issues so triable.

14

Dated:  February 28, 2022

Respectfully submitted,

By:  _/s/ Raina C. Borrelli, Admitted Pro Hac Vice_
    Raina C. Borrelli, *Admitted Pro Hac Vice*
    TURKE & STRAUSS LLP
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (608) 237-1775
    Facsimile:  (608) 509-4423
    raina@turkestrauss.com

    John F. Garvey #35879
    CAREY DANIS & LOWE
    8235 Forsyth, Suite 1100
    St. Louis, Missouri 63105
    Telephone: (314) 725-7700
    Facsimile:  (314) 678-3401
    jgarvey@careydanis.com

    Anthony Paronich, *Admitted Pro Hac Vice*
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 485-0018
    Facsimile:  (508) 318-8100
    anthony@paronichlaw.com

    Matthew R. Wilson (*pro hac vice* to be filed)
    Michael J. Boyle, Jr. (*pro hac vice* to be filed)
    Jared W. Connors (*pro hac vice* to be filed)
    MEYER WILSON CO., LPA
    305 W. Nationwide Blvd.
    Columbus, OH 43215
    Telephone: (614) 224-6000
    Facsimile:  (614) 224-6066
    mwilson@meyerwilson.com
    mboyle@meyerwilson.com
    jconnors@meyerwilson.com

    *Attorneys for Plaintiff and the Proposed Classes*

— **EXHIBIT  A** —